### ROGERS v. JARDEN.
### No. 16544.

District Court, E. D. Pennsylvania.
April 21, 1932.

Joseph W. Henderson, of Philadelphia, Pa., for plaintiff.

Ben-Zion D. Oliensis, of Philadelphia, Pa., for defendant.

KIRKPATRICK, District Judge.

This is a suit brought by the receiver of a national bank against a stockholder to recover an assessment, duly made by the Comptroller of the Currency. The plaintiff has taken a rule raising the question of the legal sufficiency of the affidavit of defense.

Both parties concede that the affidavit as filed is not legally sufficient, in that it fails to show any of the conditions which, under the decision of the Supreme Court in Matteson v. Dent, 176 U. S. 521, 20 S. Ct. 419, 421, 44 L. Ed. 571, are requisite to relieve the defendant, who is admittedly the record owner of the stock, from liability for the assessment. In this respect, however, the affidavit is amendable.

This rule indirectly also puts in issue the legal sufficiency of the statement of claim. While the allegation that the Comptroller took possession of the bank as an insolvent bank sufficiently indicates that he was acting under the third contingency specified by the statute, the mere statement that he was acting "in pursuance of the power and authority vested in him by the statutes and laws of the United States" is not a sufficient averment that the requirements of the statute have been complied with. It is true, as was stated by the court in Liberty National Bank v. McIntosh (C. C. A.) 16 F.(2d) 906, that the decisions of the Comptroller are not subject to collateral attack and their correctness is not in issue in a suit by the receiver, but the statement of claim must show that the Comptroller did make a decision, and this must appear otherwise than by a general allegation that he acted in pursuance of law. An amendment of the statement of claim in accord with this view will be permitted.

When this amendment has been made, the real question involved here will again come before the court, and it might as well be decided now. That question is, Does the practice of the court, in conformity with the Pennsylvania Practice Act (see 12 PS § 382 et seq.), require any affidavit of defense at all?

The Act of May 25, 1887, § 1 (12 PS § 1), grouped all demands "heretofore recoverable in debt, assumpsit or covenant," and provided that an action "called an 'action of assumpsit'" should lie in all such cases. In construing the act of 1887, the Supreme Court of Pennsylvania, in Corry v. Pennsylvania R. R. Company, 194 Pa. 516, 45 A. 341, held that, regardless of the fact that an action might have been properly brought in assumpsit, an affidavit of defense would not be required where the cause of action was really ex delicto or of a mixed character containing elements both of contract and of tort. The doctrine of this leading case has in no way been affected or modified by the later Practice Act of 1915 (see 12 PS § 382 et seq.). Parry v. First National Bank of Lansford, 270 Pa. 556, 562, 113 A. 847.

The cause of action here presented is a liability imposed by statute. Obligations of this kind are usually described as quasi contractual. The liability imposed is of a distinct kind, and the effort to assimilate it either to tort or contract results only in confusion. It has none of the characteristics of a cause of action sounding in tort, few of one sounding in contract. Professor Ames says: "But the obligation created by law is no contract at all. Neither mutual consent nor consideration is essential to its validity. It is enforced regardless of the intention of the obligor. It resembles the true contract, however, in one important particular. The duty of the obligor is a positive one, that is, to act. In this respect they both (i. e., contracts implied in fact and contracts implied in law) differ from obligations the breach of which constitutes a tort, where the duty is negative, that is, to forbear. Inasmuch as it has been customary to regard all obligations as arising either ex contractu or ex delicto, it is readily seen why obligations created by law should have been treated as contracts." "History of Assumpsit," Harvard Law Review, vol. 2. Debt was originally the remedy for the enforcement of a statutory or customary duty for the payment of money. Subsequently suits in indebitatus assumpsit were allowed.

The Supreme Court of the United States has recognized this form of liability as contractual in some aspects and noncontractual in others. In McClaine v. Rankin, 197 U. S. 154, 25 S. Ct. 410, 411, 49 L. Ed. 702, 3 Ann. Cas. 500, it was held that an action to enforce the statutory liability was not "an

action upon a contract or liability, express or implied, which is not in writing * * * " within the meaning of a state statute of limitations. To the same general effect is Christopher v. Norvell, 201 U. S. 216, 26 S. Ct. 502, 50 L. Ed. 732, 5 Ann. Cas. 740, where the state law construed prohibited a married woman from entering into a contract which would subject her to personal liability. For the limited purpose of construing these state statutes, the stockholder's statutory liability was held noncontractual.

On the other hand, in Matteson v. Dent, in holding the liability to be a debt of the estate of a deceased stockholder, the court said: "The obligation of a subscriber to stock to contribute to the amount of his subscription for the purpose of the payment of debts is contractual, and arises from the subscription to the stock. * * * This contract obligation, existing during life, is not extinguished by death, but like other contract obligations survives and is enforceable against the estate of the stockholder."

The situation which produced the apparent diversity of rulings in the foregoing cases exists in the present case. The trouble is that the Legislature usually fails to recognize and provide for quasi contractual obligations as a separate and distinct class, and, in construing the various statutes, it is necessary, therefore, to attempt to classify them as either contractual or noncontractual. In each case the governing consideration is the policy of the statute or law to be construed and what it was intended to accomplish.

We may therefore discard the attempt to classify this stockholder's statutory liability as either arising ex contractu or ex delicto, and try to ascertain whether in the Practice Act the Legislature intended to require the filing of an affidavit of defense in a suit based upon an obligation of this kind. The policy of excluding actions sounding in tort from the affidavit of defense law, even though such actions were of a particular order which might properly have been brought in assumpsit, appears clearly in the opinion of the court in Corry v. Pennsylvania R. R. Company, supra. At page 521 of 194 Pa., 45 A. 341, 342, the court said: "The plain inference from the language of both sections is that it was the intention of the legislature to limit this remedy to causes of action which were either actually in writing, or contracts the whole details of which could be plainly set down in writing, with particular terms and limitations, so that a liability for the payment of a definite sum of money could be expressed. Where the element of negligence

enters into the relation of the parties, indefinite and uncertain damages, depending, not on any stipulations of the parties, whether express or implied, but on the uncertain verdicts of juries, become substituted as the foundation of the right of recovery." In other words, in certain classes of actions the conditions of the obligation which is the basis of the cause of action are easily ascertainable, and can be clearly defined, and the result of the breach can be liquidated with a fair degree of certainty. In such actions an issue of law can be arrived at through written pleadings much more readily than in others. It was actions of this kind to which, the court clearly indicates, the affidavit of defense law was addressed.

Applying this thought, it seems clear that, for all practical purposes of convenience and policy in construing the Practice Act, the present action should be grouped with actions ex contractu, and it follows that an affidavit of defense will be required.

The pending rule is discharged. The plaintiff may amend the statement of claim as indicated herein, and the defendant will then be required to file an affidavit of defense. The affidavit now filed being insufficient, an amended affidavit may be filed.